


Bk: LR200763 Pg:8003
Jefferson County,Alabama
I certify this instrument filed on:
07/02/2007 01:54:13 PM MTG
Judge of Probate- Alan L. King

**AMERICAN GENERAL FINANCIAL SERVICES**

STATE OF ALABAMA

JEFFERSON COUNTY)

12.00
148.50
160.50

## FIRST MORTGAGE

THIS INDENTURE made on 07/02/2007, between BARBARA A BREWER and HUSBAND DAN HARMON JR (hereinafter, whether one or more, referred to as "Mortgagor"), and American General Financial Services of Alabama, Inc.,

WITNESSETH:

WHEREAS, the said BARBARA A BREWER AND HUSBAND DAN HARMON JR (is) (are) justly indebted to Mortgagee as evidenced by a note of even date herewith in the principal amount of $ 99000.00 together with interest and other allowable charges is $ 170428.20, payable in monthly installments, the last of which installments shall be due and payable on 7/15/ 2022 (the "Loan").

NOW, THEREFORE, the undersigned Mortgagor in consideration of the premises and to secure the payment of the Loan and compliance with all the stipulations herein contained, does hereby grant, bargain, sell and convey unto American General Financial Services of Alabama, Inc., its successors and assigns, the following described real estate, situated in JEFFERSON County, Alabama, to wit:

SEE EXHIBIT A

Together with all rights, privileges, tenements and appurtenances thereunto belonging or in any wise appertaining, including, but not limited to, heating, air-conditioning, lighting, plumbing and all other fixtures appertaining to said real estate, all of which shall be deemed realty and conveyed by this Mortgage (said real estate and fixtures being hereinafter sometimes referred to as the "Property").

TO HAVE AND TO HOLD the Property, and every part thereof, unto Mortgagee, its successors and assigns forever; and Mortgagor covenants with Mortgagee that Mortgagor is lawfully seized in fee simple of the Property and has a good right to mortgage and convey the same; that the property is free of all encumbrances, except the lien of current ad valorem taxes, and such other encumbrances, if any, as are expressly set out above; and Mortgagor will warrant and forever defend the title to the same unto Mortgagee, its successors and assigns, against the lawful claims of all persons whomsoever.

To secure the Loan further, Mortgagor agrees: (a) to pay all taxes, assessments or other liens taking priority over this Mortgage, imposed legally upon the Property, and should default be made in the payment of any part thereof, Mortgagee, at its option, may pay the same; and (b) to keep the Property continuously insured in such manner and in such companies as may be satisfactory to Mortgagee, for the full insurable value thereof, with loss, if any, payable to Mortgagee, as its interest may appear. If Mortgagor fails to keep the Property so insured, Mortgagee may, at its option, so insure the Property for Mortgagee's own benefit, the proceeds from such insurance, if collected, shall be credited on the Loan, less the costs of collecting same, or, at the election of Mortgagee, may be used in repairing or reconstructing the property. All amounts so expended by Mortgagee for insurance or for the payment of taxes, assessments or any other prior liens shall become an additional debt due and at once payable to Mortgagee, without demand upon or notice to any person, shall be secured by the lien of this Mortgage, and shall bear interest from date of payment by Mortgagee, and at the election of Mortgagee, and without notice to any person, Mortgagee may declare the Loan due and payable, and this Mortgage may be foreclosed as hereinafter provided.

Mortgagor may elect to have Mortgagee maintain an escrow fund for payment of real estate taxes, assessments, insurance premiums, or other obligations that might encumber the Real Estate if not timely paid when due. If Mortgagor so elects, Mortgagor shall pay to Mortgagee on the day Monthly Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Mortgagee, including, but not limited to Hazard Insurance and Flood Insurance; and (d) Mortgage Insurance premiums, if any, or any sums payable by Mortgagor to Mortgagee in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Mortgagee may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Mortgagor, and such dues, fees and assessments shall be an Escrow Item. Mortgagor shall promptly furnish to Mortgagee all notices of amounts to be paid under this Section. Mortgagor shall pay Mortgagee the Funds for Escrow Items unless Mortgagee waives Mortgagor's obligation to pay the Funds for any or all Escrow Items. Mortgagee may waive Mortgagor's obligation to pay Mortgagee Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Mortgagor shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Mortgagee and, if Mortgagee requires, shall furnish to Mortgagee receipts evidencing such payment within

ALB431 (10-17-04) Real Estate First Mortgage

such time period as Mortgagee may require. If Mortgagor is obligated to pay Escrow Items directly and fails to do so, Mortgagee may pay such amount and Mortgagor shall then be obligated to repay to Mortgagee any such amount. Mortgagee may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the notice provision of this Mortgage and, upon such revocation, Mortgagor shall pay to Mortgagee all Funds, and in such amounts, that are then required under this or other applicable Sections.

Mortgagee may, at any time, collect and hold Funds in an amount (a) sufficient to permit Mortgagee to apply the Funds at the time specified under the federal Real Estate Settlement Procedures Act and implementing regulations (collectively, "RESPA") and (b) not to exceed the maximum amount a Mortgagee can require under RESPA. Mortgagee shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Mortgagee shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Mortgagee shall not charge Mortgagor for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Mortgagee pays Mortgagor interest on the Funds and Applicable Law permits Mortgagee to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Mortgagee shall not be required to pay Mortgagor any interest or earnings on the Funds. Mortgagor and Mortgagee can agree in writing, however, that interest shall be paid on the Funds. Mortgagee shall give to Mortgagor, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Mortgagee shall account to Mortgagor for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Mortgagee shall notify Mortgagor as required by RESPA, and Mortgagor shall pay to Mortgagee the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Mortgagee shall notify Mortgagor as required by RESPA, and Mortgagor shall pay to Mortgagee the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Mortgage, Mortgagee shall promptly refund to Mortgagor any Funds held by Mortgagee.

Mortgagor agrees to take good care of the Property, not to commit or permit any waste thereon, to keep the same repaired, and at all times to maintain the same in as good condition as the same now is, reasonable wear and tear excepted.

Notwithstanding any other provision of this Mortgage or the Note or Notes evidencing the Loan, the Loan shall become immediately due and payable at the option of the Mortgagee, upon the conveyance of the Real Estate, or any part thereof or any interest therein.

Mortgagor agrees that no delay or failure of Mortgagee to exercise any option to declare the maturity of any debt secured hereby shall be deemed a waiver of its right to exercise such option or declare such forfeiture, either as to any past or present default; and it is further agreed that no terms or conditions contained in this Mortgage can be waived, altered or changed except in writing, signed by Mortgagor and by an executive officer of Mortgagee.

After any default hereunder, Mortgagee shall, upon bill filed or other property legal proceeding being commended for the foreclosure of this Mortgage, be entitled, as matter of right, to the appointment by any competent court or tribunal, without notice to any party, of a receiver of the rents, issues and profits of the Property, with power to lease and control the Property, and with such other powers as may be deemed necessary.

UPON CONDITION, HOWEVER, that if Mortgagor pays the Loan and any renewals or extensions thereof, and all other indebtedness secured hereby, and reimburses Mortgagee for any amount it may have expended in payment of taxes and insurance or other liens, and interest thereon, and shall do all other acts herein agreed to be done, this conveyance shall be null and void; but should default be made in the payment of any sum expended by Mortgagee under the authority of any of the provisions hereof, or should the Loan, or any renewals or extensions thereof, or any part thereof, or any interest thereon, remain unpaid at maturity, by acceleration or otherwise, or should the interest of Mortgagee in the Property become endangered by reason of the enforcement of any prior lien or encumbrance thereon so as to endanger the Loan, or should any law, either federal or state, be passed imposing or authorizing the imposition of any specific tax upon this Mortgage or the Loan, or permitting or authorizing the deduction of any such tax from the principal or interest of the Loan, or by virtue of which any tax or assessment upon the Property shall be chargeable against the owner of this Mortgage, then, in any one of said events, all indebtedness hereby secured, or such portion thereof as may not at said date have been paid, with interest thereon, shall at once become due and payable at the option of the Mortgagee, and this Mortgage may be foreclosed as now provided by law in case of past due mortgages; and Mortgagee shall be authorized to take possession of the Property, and after giving twenty-one days notice by publication once a week for three consecutive weeks of the time, place and the terms of sale, in some newspaper published in the county wherein the Property is located, to sell the same in front of the Courthouse door of such County, at public outcry, to the highest bidder for cash, and apply the proceeds of said sale: first, to the expense of advertising, selling and conveying, including such attorney's fee as may be permitted under the terms of the Note evidencing the Loan; second, to the payment of any amounts that may have been expended, or that may then be necessary to expend, in paying insurance, taxes and other encumbrances, with interest thereon; third, to the payment in full of the Loan and earned interest thereon, whether or not the same shall have fully matured at the date of said sale, but no interest shall be collected beyond the day of sale and any unearned interest shall be returned to Mortgagor; and fourth, the balance, if any, to be turned over to Mortgagor.

Mortgagor further agrees that Mortgagee, its successors or assigns, may bid at any sale had under the terms of this Mortgage and purchase the Property, if the highest bidder therefor; and the Purchaser at any such sale shall be under no obligation to see to the proper application of the purchase money.

In the event of a sale hereunder, Mortgagee, or the owner of the Loan and this Mortgage, or the auctioneer, shall execute to the purchaser for and in the name of Mortgagor a good and sufficient deed to the Property.

Mortgagor waives all right of homestead exemption in the property and relinquishes all rights of courtesy and dower in this Property.

Plural or singular words used herein to designate the undersigned shall be construed to refer to maker or makers of this Mortgage, whether one or more persons; all covenants and agreements herein made by the undersigned shall bind the heirs, personal representatives and assigns of the undersigned; and every option, right and privilege herein reserved or secured to Mortgagee shall inure to the benefit of its successors and assigns.

Each of the undersigned hereby acknowledges receipt of a completed duplicate copy of this Mortgage.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his or her hand and seal on the day and year first above written.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY
READ THIS CONTRACT BEFORE YOU SIGN IT.

WITNESSES:

_____   _____ (SEAL)
                                  BARBARA A BREWER

_____   _____ (SEAL)
                                  DAN HARMON JR

ALB432 (10-17-04) Real Estate First Mortgage

STATE OF ALABAMA )
~~JEFFERSON~~ )
_____ COUNTY)

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that BARBARA A BREWER AND HUSBAND DAN HARMON JR _____ whose name(s) (is) (are) signed to the foregoing conveyance, and who (is) (are) known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, (he) (she) (they) executed the same voluntarily on the day the same bears date.

Given under my hand and official seal, this 2ND day of JULY 2007

*/s/ Latisa J Carter*
Notary Public

(AFFIX SEAL)

This instrument was prepared by:
LATISA CARTER PO BOX 866 BESSEMER AL 35021

MY COMMISSION EXPIRES
JULY 30, 2007

ALB433 (10-17-04) Real Estate First Mortgage

LEGAL DESCRIPTION:

LOT 15 AND 16, IN BLOCK 40, ACCORDING TO THE SURVEY OF BESSEMER, AS RECORDED IN MAP BOOK 5, PAGE 75, IN THJE PROBATE OFFICE OF JEFFERSON COUNTY, ALABAMA; BESSEMER DIVISION.

SUBJECT TO ALL RESTRICTIONS, RESERVATIONS, RIGHTS, EASEMENTS, RIGHTS-OF-WAY, PROVISIONS, COVENANTS, TERMS, CONDITIONS AND BUILDING SET-BACK LINES OF RECORD.

ADDRESS: 1531 GRANVILLE AVENUE, BESSEMER, AL 35020   TAX MAP OR PARCEL ID NO.: ███████████████

SUBJECT PROPERTY IS LOCATED IN JEFF/BESSEMER COUNTY

```
20070702001024680      4/4
Bk: LR200763 Pg:8003
Jefferson County,Alabama
07/02/2007 01:54:13 PM MTG
Fee - $12.00

Mortage Tax -$148.50
Total of Fees and Taxes-$160.50
KMBESS
```



# LOAN AGREEMENT AND DISCLOSURE STATEMENT

**AMERICAN GENERAL FINANCIAL SERVICES**

| DATE 07/02/07 | ACCOUNT NUMBER ▮▮▮ | TYPE OF LOAN (Alpha) F00 |
|---|---|---|
| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | LENDER'S TELEPHONE NUMBER 205-428-6237 | |

AMERICAN GENERAL FINANCIAL SERVICES OF ALABAMA, INC.
700 ACADEMY DR STE 100
BESSEMER, AL 35023-5200

BORROWER(S) NAME AND ADDRESS ("I","We")

BARBARA A BREWER
1531 GRANVILLE AVENUE
BESSEMER, AL 35020

I will read this entire Loan Agreement and Disclosure Statement ("Agreement") and all related documents carefully. If I have any questions, I will ask them before I sign any of these documents. By signing, I am indicating my agreement to the statements, promises, terms, and conditions contained in the documents I sign.

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 8.11 % | $ 72062.20 | $ 98366.00 | $ 170428.20 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 1078.09 | 08/15/07 |
| 179 | $ 946.09 | monthly beginning 09/15/07 |

**LATE CHARGE:** [X] If any payment is not paid in full within __10__ days after its due date, I will be charged __5.00__ % of the __unpaid__ amount of the payment, but not more than $ __99.99__ or less than $ __10.00__.

[ ] If any payment is not paid in full within ____ days after its due date, I will be charged $ _____ if the entire scheduled payment exceeds $ _____ or $ _____ if the entire scheduled payment is $ _____ or less.

**PREPAYMENT:** If I pay off early:
- [ ] I may  [X] I will not  have to pay a penalty or minimum charge.
- [ ] I may  [X] I will not  get a refund or credit of part of the finance charge.

**SECURITY:** I am giving Lender a security interest in:

[X] Real estate located at: 1531 GRANVILLE AVENUE
BESSEMER, AL 35020

[ ] Motor Vehicles

| Year | Make | Model | Vehicle Identification No. |
|---|---|---|---|
| | | | |

[ ] Other Assets

| Other Assets Description |
|---|
| |

[ ] Household items described on the Personal Property Appraisal Form, which I have signed and which has been delivered to me with this Agreement.

**ASSUMPTION:** Someone buying my home, if it secures this loan, may not assume the remainder of this loan on the original terms unless approved by Lender.

[ ] My loan contains a variable-rate feature. Disclosures about the variable-rate feature have been provided to me earlier.

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

## THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

_Barbara A Brewer_
Borrower

_____
Co-Borrower

SEE REVERSE SIDE FOR ADDITIONAL DISCLOSURES

UNAA91 (01-15-06) Agreement (1-2)     Page 1

Case 19-02370-DSC13    Doc 40-2    Filed 12/23/20    Entered 12/23/20 17:20:26    Desc Exhibit    Page 5 of 15

## ITEMIZATION OF AMOUNT FINANCED

Amounts paid to others on my behalf

| # | Amount | Description | Paid To |
|---|--------|-------------|---------|
| 1. | $ NONE | | PAID TO |
| 2. | $ NONE | | PAID TO |
| 3. | $ NONE | | PAID TO |
| 4. | $ NONE | | PAID TO |
| 5. | $ NONE | | PAID TO |
| 6. | $ 165.00 | Title Examination Fee | PAID TO NATIONAL REAL ESTATE |
| 7. | $ NONE | | PAID TO |
| 8. | $ 350.00 | Appraisal Fee | PAID TO NATIONAL REAL ESTATE |
| 9. | $ NONE | | PAID TO |
| 10. | $ NONE | | PAID TO |
| 11. | $ NONE | | PAID TO |
| 12. | $ NONE | | PAID TO |
| 13. | $ 156.50 | Title Insurance Fee | PAID TO NATIONAL REAL ESTATE |
| 14. | $ NONE | | PAID TO |
| 15. | $ NONE | | PAID TO |
| 16. | $ 160.50 | Recording/Releasing Fees RE | PAID TO GOVERNMENT AGENCY |
| 17. | $ NONE | | PAID TO |
| 18. | $ NONE | | PAID TO |
| 19. | $ NONE | | PAID TO |
| 20. | $ NONE | | PAID TO |
| 21. | $ 10222.31 | | PAID TO WFFINANCIAL AND BARBARA A BREWER |
| 22.–45. | $ | | PAID TO |

Amount Paid on Prior Account with Lender
46. $ 85190.37

Amounts Paid to me
47. $ 2121.32    PAID TO GOODYEAR AND BARBARA A BREWER
48.–56. $    PAID TO

$ 98366.00  Amount Financed (Sum of lines 1 - 56)
$   634.00  Prepaid Finance Charges (itemized below)

## PREPAID FINANCE CHARGES

| # | Amount | Description | Paid To |
|---|--------|-------------|---------|
| 1. | $ 575.00 | Points | PAID TO LENDER |
| 2. | $ NONE | | PAID TO |
| 3. | $ NONE | | PAID TO |
| 4. | $ NONE | | PAID TO |
| 5. | $ NONE | | PAID TO |
| 6. | $ NONE | | PAID TO |
| 7. | $ NONE | | PAID TO |
| 8. | $ NONE | | PAID TO |
| 9. | $ NONE | | PAID TO |
| 10. | $ NONE | | PAID TO |
| 11. | $ NONE | | PAID TO |
| 12. | $ NONE | | PAID TO |
| 13. | $ NONE | | PAID TO |
| 14. | $ NONE | | PAID TO |
| 15. | $ 59.00 | Tax Service Fee | PAID TO ZC Sterling |

SEE NEXT PAGE FOR IMPORTANT INFORMATION

UNAA92 (01-15-06) Agreement (1-2)    Page 2    Initials

# ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person—the arbitrator—instead of a judge or jury, to resolve the dispute. TO THE FULLEST EXTENT PERMITTED BY LAW, BY SIGNING THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT ("this Arbitration Agreement").

**CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us ("Covered Claims"). This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

> My loan from Lender today; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

**COVERED CLAIMS AGAINST THIRD PARTIES.** This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of its affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender, any third parties that assigned Retail Contracts or other agreements to Lender; and any of the employees, officers, agents, or directors of such affiliates or third parties. Affiliate corporations are Lender's parent corporations, subsidiary corporations, and sister corporations. Some of Lender's affiliates are American General Finance Corporation, American General Financial Services, Inc., Merit Life Insurance Co., and Yosemite Insurance Company. In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party, all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Agreement, provided that the third party is required to agree to resolve such claims by arbitration.

**MATTERS NOT COVERED BY ARBITRATION.** I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin, or foreclosure, but instead may proceed in court for those judicial remedies (an "Excluded Collateral Lawsuit"). I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counter claim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover an amount which does not exceed the total sum of $5,000.00 (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit"). If an Excluded Damages Lawsuit is filed, the other party cannot require that the claims in that lawsuit be arbitrated. An Excluded Damages Lawsuit can be brought to recover money for myself or Lender only, not for any class or group of persons having similar claims. If such an Excluded Damages Lawsuit is filed by me or Lender, and any party to that lawsuit files an amendment, counterclaim, cross-claim, or third-party claim seeking to recover more than $5,000, then that claim, counterclaim, cross-claim, or third party claim must be arbitrated in accordance with the procedures set forth in this Arbitration Agreement. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin, or foreclosure or by having filed any claims in court seeking to recover a total sum of $5,000.00 or less.

**ARBITRATION RULES AND PROCEDURES.**

**A. ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the rules and procedures of the National Arbitration Forum ("NAF") that are in effect at the time arbitration is started and under the rules set forth in this Arbitration Agreement. At my request, Lender will provide me a copy of the NAF Rules. If I lose my copy, Lender will give me another one if I ask for it. I may also obtain a copy of those rules by calling NAF at 1-800-474-2371 or by reviewing NAF's web-site at www.arb-forum.com. In the event that NAF is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the NAF for good cause, then Lender and I agree to submit all disputes to the American Arbitration Association ("AAA") for proceedings conducted pursuant to the AAA's Commercial Rules and Expedited Procedures. If there is a conflict between the rules of the NAF (or the AAA) and this Arbitration Agreement, this Arbitration Agreement will govern.

**B. SELECTION OF ARBITRATOR.** NAF maintains lists of approved arbitrators. NAF will provide Lender and me each a list of seven (7) possible arbitrators. Lender and I will each have an opportunity to strike three (3) persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator.

**C. STARTING ARBITRATION.** Before I start arbitration, I agree to write to Lender at the address shown for Lender in this Agreement, unless I have received notice of a new address for Lender, and I agree to give Lender a reasonable opportunity to respond and resolve any errors. In my letter, I will give the following information: my name and account number, a description of my claim or dispute and why I believe Lender has made an error, the dollar amount of my claim or dispute, and a description of any other information I need from Lender. Before Lender starts an arbitration, it must write to me at my billing address; describe its claim or dispute; state the dollar amount of its claim or dispute; and give me a reasonable opportunity to resolve the claim or dispute. If a Covered Claim cannot be resolved in the foregoing manner, either Lender or I can start arbitration. Except as described in Paragraph E below, nothing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations. To start an arbitration, Lender and I agree to follow the rules of the NAF (or, if applicable, the rules of the AAA).

**D. COSTS OF ARBITRATION.** The NAF and AAA charge certain fees in connection with arbitration proceedings they conduct. I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost. Lender will also bear any costs Lender is required to bear by law or the terms of any other agreement with me. Each party will also pay for its own costs, including fees for attorneys, experts, and witnesses, unless otherwise provided by law or by the terms of any other agreement between the parties, to the extent permitted by applicable law.

**E. CONDUCT OF PROCEEDINGS.** In conducting the arbitration proceedings, the arbitrator shall be bound by the Federal Rules of Evidence; however, the federal or any state rules of procedure or discovery shall not bind the arbitrator. The arbitrator's findings, reasoning, decision, and award shall be set forth in writing and shall be based upon and be consistent with the law of the jurisdiction that applies to the loan or other agreement between Lender and me. The arbitrator must abide by all applicable laws protecting the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges.

SEE REVERSE SIDE FOR ADDITIONAL ARBITRATION TERMS

Case 19-02370-DSC13    Doc 40-2    Filed 12/23/20    Entered 12/23/20 17:20:26    Desc Exhibit    Page 7 of 15

## ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL (con'd)

F. **ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims involving more than $100,000, any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the NAF or AAA, as the case may be. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision, and award shall be subject to judicial review on the grounds set forth in 9 U.S.C. § 10, as well as on the grounds that the findings, decision, and award are manifestly inconsistent with the terms of this Arbitration Agreement and any applicable laws or rules.

G. **LIMITATION OF PROCEEDINGS.** Lender and I further agree that the arbitrator will be restricted to resolving only the claims, disputes, or controversies between Lender and me and the other parties covered by this particular Agreement (and not by similar agreements). Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands of other persons. I agree not to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim.

H. **LIMITATION OF ARBITRATOR'S AUTHORITY:** The arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages. In awarding any punitive damages, the arbitrator must abide by all applicable state and federal laws regarding the amount of such damages, and the arbitrator must state the precise amount of the punitive damages award. The arbitrator must also conduct a post-award review of any punitive damages, allowing the parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the arbitration is conducted. The arbitrator may award injunctive relief that would benefit either Lender or me in connection with resolving a Covered Claim between Lender and me, but the arbitrator may not award injunctive relief for the benefit of other persons or groups of persons who are not named parties to the arbitration proceeding.

I. **LOCATION OF THE ARBITRATION.** The arbitration will take place in the county where I live unless Lender and I agree to another location. If Lender and I agree, all or a portion of the arbitration proceedings can be conducted by telephone conference.

J. **ENFORCEMENT IN COURT.** Nothing in this Arbitration Agreement shall prevent either Lender or me from enforcing all rights under this Arbitration Agreement if a Covered Claim is filed in court.

K. **FORUM SELECTION CLAUSE.** If either Lender or I need to file a lawsuit to enforce this Arbitration Agreement or to pursue claims that either may or may not be arbitratable under this Arbitration Agreement, the exclusive venue for that suit will be a state court located in the county where Lender's office is located or where I sign this Agreement, or in the federal court covering that county, unless the governing law requires suit to be filed in another location. Nothing in this paragraph shall prevent either Lender or me from enforcing its or my rights under this Arbitration Agreement if the Covered Claim is filed in court.

**ADDITIONAL INFORMATION.** I may obtain additional information about arbitration by contacting the National Arbitration Forum, Inc., at P.O. Box 50191, Minneapolis, Minnesota 55405. (800-474-2371 (Telephone)). (651-631-0802 (Fax)). www.arb-forum.com (e-mail).

**OTHER IMPORTANT AGREEMENTS.** Lender and I agree:

(a) This Arbitration Agreement does not affect any statute of limitations or claims of privilege recognized at law.

(b) The loan and insurance transactions between Lender and me and other applicable parties are transactions involving interstate commerce, using funds and other resources from outside the state.

(c) The Federal Arbitration Act applies to and governs this Agreement. State arbitration laws and procedures shall not apply to this Agreement.

(d) This Agreement applies to and runs to the benefit of Lender's and my assigns, successors, executors, heirs, and/or representatives.

(e) If any term of this Arbitration Agreement is unenforceable, the remaining terms are severable and enforceable to the fullest extent permitted by law.

(f) This Arbitration Agreement supersedes any prior arbitration agreement that may exist between Lender and me and can only be modified in writing signed by the parties.

(g) This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged off, or discharged or modified in bankruptcy.

I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.

SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION

**DATE OF LOAN.** 07/09/07 (the date ● Finance Charge is scheduled to begin to accr●
**CONTRACT RATE.** 8.00 % per year, which is the agreed interest rate. If the "Adjustable Rate Loan" box is checked below, this rate is subject to change as set forth therein.

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the Truth in Lending Disclosure on page 1 of this Agreement, and with all other terms of this Agreement. If the "Adjustable Rate Loan" box is checked below, the payment amounts set forth in the Payment Schedule may change as set forth in this Agreement.

☐ **ADJUSTABLE RATE LOAN.** If this box is checked, I agree that the agreed interest rate I will pay may change on the Due Date of my _____ payment and on that same date every _____ thereafter ("the Change Date"). If there is no corresponding date in any given month, the Change Date will be the last day of the month. (For example, if my rate can change quarterly and my Change Date is January 31, my next Change Date will be April 30.) My interest rate will be based on an index. The index is the highest Prime Rate published in The Wall Street Journal's "Money Rates" table. If this index should no longer be available, Lender will choose a comparable replacement index and will inform me of the new index.
Prior to each Change Date, Lender will calculate the new agreed interest rate by taking the index as of 60 days prior to the Change Date and adding a margin of _____ percentage points. Lender will round the resulting figure down to the next lowest one-hundredth of one percent. Lender will then determine the new monthly payment amount necessary to repay my loan in full on the due date for the final payment.
My interest rate will never increase or decrease on any single Change Date by more than _____ percentage points from the agreed rate of interest in effect immediately preceding the Change Date. Any rate change not implemented as a result of this limitation may be carried over to the next Change Date. My interest rate will never increase by more than eight percentage points (for first mortgage loans) or ten percentage points (for subordinate mortgage loans) over the initial Prime Rate, and in no event will ever be greater than _____ %, and will never be less than _____ %.
The new agreed interest rate will be effective as of the Change Date. The new monthly payment will be effective as of the next regularly scheduled due date subsequent to the Change Date. Lender will send me notice of all rate and payment changes as required by law.

**SECURITY AGREEMENT.** If any type of personal property (property other than real estate ("real property")) is disclosed in the "Security" section of the Truth in Lending Disclosures, to secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I grant Lender a security interest under the Uniform Commercial Code or other applicable law in: (1) the property identified in the "Security" disclosure of the Truth in Lending Disclosures on page 1 of this Agreement; (2) any substitutions or replacements of that property; and (3) the proceeds and products of that property (collectively referred to as the "Collateral"). I also grant Lender a security interest in any unearned premiums from any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance). Lender's security interest shall remain in effect until I have paid in full all amounts due under this Agreement and any modifications, renewals, and extensions thereof. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement when appropriate. If real property is disclosed in the "Security" section of the Truth in Lending Disclosures, I am signing a mortgage or deed of trust covering the real property at the same time that I am signing this Agreement.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that they are jointly and severally liable and that Lender may enforce this Agreement against all or any of them, but not in a combined amount exceeding the amount due.

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Maker if this Agreement is in default. Unless required by law, Lender will not notify me if: (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Maker(s).

**CREDIT INFORMATION.** I authorize Lender to investigate my creditworthiness, including to obtain my credit report at anytime, as permitted by law.

**REQUIRED PROPERTY INSURANCE.** I agree to insure any automobiles, all terrain vehicles, snowmobiles, watercraft, other titled vehicles, large equipment, and dwellings and other structures attached to real property ("Property"), in which I have granted Lender an interest to secure my loan, against all risks of physical damage, including loss by fire and other hazards, for the term of the loan, in amounts and with deductibles approved by Lender ("Required Insurance"). Required Insurance must: (1) be issued by an insurer and have terms and conditions satisfactory to Lender; (2) name Lender as loss payee or mortgagee; (3) not permit the addition of any other loss payee or mortgagee to the insurance policy unless Lender consents in writing; (4) provide that such insurance will not be canceled or modified without at least 15 days prior written notice to the loss payee or mortgagee; and (5) not include any disclaimer of the insurer's liability for failure to give such notice. I may purchase Required Insurance from whomever is acceptable to Lender or provide existing coverage through any insurance company or agent of my choice that is acceptable to Lender. Lender does not sell Required Insurance. I agree to provide to Lender satisfactory proof of Required Insurance. I agree to keep Required Insurance in force until all amounts I owe Lender under this Agreement are paid in full. In the event of damage to or loss of the Property, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may, but is not required to, do so on my behalf. I agree Lender may use any insurance proceeds to reduce any amounts I owe under this Agreement. To the extent permitted by law, I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds paid to Lender do not pay off all amounts I owe Lender under this Agreement, I remain responsible for payment of the balance of any amounts due under this Agreement.

**LENDER PLACED INSURANCE.** If at any time I fail to buy or keep in force Required Insurance, Lender may, but is not required to, purchase Required Insurance at my expense to protect Lender's interest in the Property. I agree that Required Insurance may, but to the extent permitted by law, need not, protect my interests. The coverage purchased by Lender may not pay any claim I make. I agree that the cost of Required Insurance purchased by Lender may be much more than the cost of Required Insurance I could have obtained on my own, and I agree that the cost of such Required Insurance may, to the extent permitted by law, be added to my loan balance and accrue interest at the Contract Rate. I authorize Lender to release to third parties any information necessary to monitor the status of Required Insurance on my Property and to purchase Required Insurance required by this Agreement.

**VOLUNTARY CREDIT INSURANCE.** Lender's affiliate may provide the credit insurance that I voluntarily select. Lender and/or its affiliates expect to profit from my purchase of voluntary credit and personal property insurance and I consent to this. The terms "credit insurance" and "credit life insurance" include debtor group life insurance, where offered.

**ASSIGNMENT OF UNEARNED INSURANCE PREMIUMS AND POLICY PROCEEDS.** I, where authorized by law, hereby assign to Lender any moneys, not in excess of the unpaid balance of indebtedness which this instrument secures, which may become payable under any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance), including return of unearned premiums, and direct any insurance company to make payment directly to Lender to be applied to said unpaid indebtedness and I hereby appoint Lender as my attorney-in-fact to endorse any draft, check or other papers necessary to obtain such insurance payments.

**CORRECTION; RELEASE.** During the term of this Agreement, I agree to cooperate with Lender to: (a) correct any clerical errors that were made in connection with loan documents; (b) obtain the correct amounts due to others; and (c) release all liens upon payment in full. Lender may consider any breach of this requirement as an event of default of this Agreement.

**CANCELLATION.** Prior to the distribution of loan proceeds, Lender may withdraw its approval of or commitment to make this loan if Lender reasonably believes that: (a) there are material omissions or misrepresentations in connection with my credit application; (b) there is a material, adverse change in my creditworthiness; (c) there are additional liens on the right, title, or interest of any Collateral to be used for this loan; or (d) a sale or transfer of any right, title, or interest in any Collateral to be used for this loan has or will occur that is not agreed to by the Lender.

**SEVERABILITY.** The fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any party without the express written consent of Lender.

SEE REVERSE SIDE FOR ADDITIONAL INFORMATION

**DEFAULT.** Except as prohibited by law or as limited by other provisions of this Agreement, I will be in default of this Agreement if any one of the following occurs:
  A. I fail to make any payment under this Agreement when due.
  B. I fail to do anything else I have agreed to do in this Agreement.
  C. Any statement or representation I made in my credit application is untrue or incorrect.
  D. I fail to provide Lender with proof of employment, residence, insurance, or repair to credit history within three (3) business days after Lender's written request for this information.
  E. I die, become incompetent, generally fail to pay my debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.
  F. Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.
  G. Any police or governmental agency seizes or impounds the Collateral, if the Collateral consists of personal property, or starts forfeiture proceedings against the Collateral.
  H. If the Collateral consists of personal property, I relocate to another state without giving written notice at least 30 days before relocating.
  I. I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.
  J. Any other event or circumstance occurs that reasonably causes Lender to deem itself insecure or to believe that Lender's prospects for payment or realization upon the Collateral are impaired, unless prohibited by state law.

(**For Kansas residents only,** Lender believes the preceding events would significantly impair the prospect of payment, performance, or realization of Collateral. Except for a default resulting from my failure to make any payment as required by this Agreement, the burden of establishing the prospect of such significant impairment is on the Lender.)

**GENERAL REMEDIES.** If I am in default on this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions, all of the remedies permitted by law and this Agreement, including:
  A. Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the Amount Financed, finance charges, and all other agreed charges. These amounts will accrue finance charges from the date I am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.
  B. Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not required to do so. Upon payment by Lender, these amounts will be due immediately and will accrue finance charges from the date paid at the Contract Rate until repaid in full to Lender.
  C. If the Collateral consists of personal property, Lender may require me to make the Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and me.
  D. If the Collateral consists of personal property, Lender may immediately immobilize, disable, or take possession of the Collateral by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses.
  E. Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover what I owe Lender, and Lender may sue me for those additional amounts.
  F. If the Collateral consists of real property, Lender may begin foreclosure proceedings as described in the mortgage or deed of trust granting Lender a security interest in the Collateral.
  G. Lender has the right, but not the obligation, to cancel or request termination of any voluntary credit or personal property insurance in the event of default and I hereby appoint Lender as my attorney-in-fact to cancel any such insurance in the event of default, subject to any applicable restrictions under state law. Return of any unearned premium as a result of such request for termination or cancellation will be credited to my loan account.
  H. Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without losing any of its rights under this Agreement, to the extent permitted by law.

By choosing any one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights are hereunder cumulative, not exclusive.

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral if it is personal property, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law.

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral securing this Agreement and taken into possession as provided above.

**WAIVER.** Unless law or this Agreement provide otherwise, I hereby waive presentment, notice and protest, and all other demands and notices in connection with the delivery, acceptance, performance, default, or endorsement of this Agreement and all suretyship defenses generally to the extent permitted by applicable law.

**NOTICES.** If required by law, Lender will provide me with notices under this Agreement, if mailed, to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance.

**DELAY IN ENFORCEMENT.** Lender may delay enforcing any of its rights under this Agreement without losing them.

**SAVINGS CLAUSE.** All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law. If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then: (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the Principal, as defined below, that I owe under this Agreement or making a direct payment to me. To the extent permitted by law, my acceptance of any such refund shall constitute a waiver of any right of action I might have arising out of such overcharge.

---

The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

I/We acknowledge that my/our monthly scheduled payments under my/our Agreement with Lender do not include payments for property taxes (or special assessments), or premiums for insurance covering the property. There are no escrow or impound accounts under my/our Agreement.

I/We agree to make required payment(s) to the appropriate taxing authority and/or insurance provider as they are due.

SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION

**INTEREST BEARING LOAN.** I agree to pay Principal, plus interest ("finance charges") on the daily unpaid Principal balance computed at the Contract Rate, in the amounts and on or before the dates set forth in the Payment Schedule in the Truth in Lending Disclosures on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. If the "Adjustable Rate Loan" box is checked above, the Contract Rate and monthly payment amounts may change as set forth therein. If I have not purchased credit insurance or have purchased single premium credit insurance, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) interest; and (c) unpaid Principal. If I have purchased credit insurance that is billed on a monthly basis, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) any past due credit insurance premiums billed on a monthly basis; (c) any past due loan payment(s); (d) currently due credit insurance premiums that are billed on a monthly basis; and (e) currently due loan payment. When applying payments to past and currently due loan payments, monies will be applied first to accrued interest with the remainder, if any, being applied to unpaid Principal. The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by Lender. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the Contract Rate, until paid in full.

**PRINCIPAL.** Principal is the total of the Amount Financed, plus any Prepaid Finance Charges and any Interest Surcharge (6% of the first $2,000 of the Amount Financed) that I have financed.

☐ **BALLOON PAYMENT.** If checked, my last scheduled payment is larger than my regular scheduled payments ("Balloon Payment"). I agree that, unless Lender has agreed to refinance my Balloon Payment, I must pay the full amount of my Balloon Payment from my own resources or by refinancing my loan with another lender on or before the due date of my Balloon Payment.

**PREPAYMENT REFUND.** I may prepay all or any part of my loan at any time. The Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, to the extent permitted by applicable law. If I prepay this loan in full within 90 days after the Date of Agreement, I will receive a pro rata refund of the Interest Surcharge, except that in such event, Lender will retain an amount no less than $25.00. After 90 days, the Interest Surcharge is fully earned by Lender. No refund of the Interest Surcharge will be made except as stated in this provision.

**LATE CHARGE.** I agree to pay any late charge described in the Truth in Lending Disclosures herein.

**DISHONORED CHECK CHARGE.** If my check or similar instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of $ 29.00 , or such higher amount allowed by Ala. Code, § 8-8-15, but not less than the actual charge by the depository institution, for the return of unpaid or dishonored instruments. Dishonored check charges that remain unpaid will accrue finance charges.

**REMEDIES UNDER ALABAMA LAW.** Except as limited by other provisions of Alabama law, in addition to the general remedies set forth above, Lender has all other rights and remedies of a secured party under the Alabama Uniform Commercial Code and/or the Alabama Mini-Code. All of Lender's rights and remedies are cumulative and not exclusive.

**DEFAULT COSTS.** In the event of default, I agree to pay Lender's: (a) court costs; (b) if the original Amount Financed is over $300, reasonable attorney's fees not to exceed 15% of the unpaid debt if this loan is referred for collection to an attorney who is not a salaried employee of Lender; and (c) costs to realize on any security interest, each if and to the extent permitted by applicable law.

**GOVERNING LAW.** The laws of the State of Alabama shall govern this Agreement, except as preempted by federal law.

**SINGLE OR DUAL-INTEREST INSURANCE.** If I fail to maintain Required Insurance, as is required by the section of this Agreement entitled Required Property Insurance, and Lender chooses to place insurance to protect the collateral that secures this Agreement, I consent to the Lender's placing of either single or dual-interest insurance coverage on the collateral securing this Agreement. Additionally, if I choose to purchase credit property insurance to protect the personal property securing this Agreement, I consent to the sale of either single or dual-interest credit property insurance coverage.

**PLEASE SEE IMPORTANT INFORMATION ON REVERSE**

**ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

**IF I DEFAULT AND THIS LOAN IS SECURED BY A MORTGAGE ON MY HOME, I MAY LOSE MY HOME.**

> BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.
>
> UNARBT (8-12-01)

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of this Agreement, the Truth in Lending Insurance Disclosures, the Privacy Notice, the Personal Property Appraisal Form (if applicable), and two copies of a Notice of Right to Cancel (if applicable) and agree to be bound thereby.

**CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

_[signed] La'Nise Carter_
Witness

X _[signed] Barbara A Brewer_ L.S.
Borrower  BARBARA A BREWER

X_____
Witness

X_____ L.S.
Co-Borrower

X_____ L.S.
Co-Maker
Print Name: _____

X_____ L.S.
Co-Maker
Print Name: _____

Case 19-02370-DSC13   Doc 40-2   Filed 12/23/20   Entered 12/23/20 17:20:26   Desc Exhibit    Page 12 of 15

# NOTE ALLONGE

THIS ENDORSEMENT IS INCORPORATED INTO AND SHALL BE DEEMED PART OF THE NOTE TO WHICH IT IS ATTACHED.

| | |
|---|---|
| Borrower 1: | BARBARA A BREWER |
| Borrower 2: | |
| Date of Loan: | 7/2/2007 |
| Loan Amount: | $99,000 |
| Property Address: | 1531 GRANVILLE AVENUE. |
| City, State, Zip: | BESSEMER, AL 35020 |

*Pay to the order of:*

Without recourse

SPRINGLEAF FINANCIAL SERVICES, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES OF ALABAMA, INC.

*[signature]*

Stephen L. Day
Vice President

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

20150916000942930 1/1
I certify this instrument filed on
09/16/2015 02:20:37 PM AS
Alan L. King, Judge of Probate
Jefferson County, AL
Rec Fee -$16.00
Deed Tax -$.00
Mtg Tax -$.00
Mineral Tax -$.00
TOTAL -$16.00   KKBESS

Loan No ▓
Springleaf Loan No ▓

Loan #: ▓

## ASSIGNMENT OF MORTGAGE

Regarding this instrument, contact Nationstar Mortgage, LLC, 4000 Horizon Way, Irving, TX 75063, telephone # 972-956-6320, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, SPRINGLEAF FINANCIAL SERVICES OF ALABAMA, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES OF ALABAMA, INC., WHOSE ADDRESS IS 601 N.W. SECOND St., EVANSVILLE, IN, 47708, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens and any rights due or to become due thereon to U.S. BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR CSMC TRUST 2014-CIM1 MORTGAGE-BACKED NOTES, SERIES 2014-CIM1, WHOSE ADDRESS IS C/O 4000 HORIZON WAY, IRVING, TX 75063, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage made by BARBARA A. BREWER AND HUSBAND, DAN HARMON, JR. and recorded in Real Property in Mortgage Book 200763, Page 8003 and Instrument # 20070702001024680 of the records in the office of the Judge of Probate of JEFFERSON - BESSEMER County, Alabama.

IN WITNESS WHEREOF, this Assignment is executed this 16th day of September in the year 2015.
SPRINGLEAF FINANCIAL SERVICES OF ALABAMA, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES OF ALABAMA, INC.

_Susan Schotsch_
SUSAN SCHOTSCH
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 16th day of September in the year 2015, by Susan Schotsch as VICE PRESIDENT of SPRINGLEAF FINANCIAL SERVICES OF ALABAMA, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES OF ALABAMA, INC., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Nicole Baldwin_
NICOLE BALDWIN
COMM EXPIRES: 08/05/2016

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

BREWER
DLJW

kasota
CSMC2014-CIM1-PRIV

7

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

## CORPORATE ASSIGNMENT OF MORTGAGE

Jefferson (Bessemer Div.), Alabama
SELLER'S SERVICING # [redacted] "BREWER"

Date of Assignment: April 16th, 2019
Assignor: U.S. BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR CSMC TRUST 2014-CIM1 MORTGAGE-BACKED NOTES, SERIES 2014-CIM1, BY NATIONSTAR MORTGAGE LLC, IT'S ATTORNEY-IN-FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS INDENTURE TRUSTEE FOR THE CIM TRUST 2017-8 MORTGAGE-BACKED NOTES, SERIES 2017-8 at 4000 HORIZON WAY, IRVING, TX 75063

Executed By: BARBARA A BREWER AND HUSBAND DAN HARMON JR  To: AMERICAN GENERAL FINANCIAL SERVICES OF ALABAMA, INC.
Date of Mortgage: 07/02/2007 Recorded: 07/02/2007 in Book/Reel/Liber: LR200763 Page/Folio: 8003 as Instrument No.: 20070702001024680 In the County of Jefferson (Bessemer Div.), State of Alabama.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $99,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

U.S. BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR CSMC TRUST 2014-CIM1 MORTGAGE-BACKED NOTES, SERIES 2014-CIM1, BY NATIONSTAR MORTGAGE LLC, IT'S ATTORNEY-IN-FACT
On April 16th, 2019

By: _____
MOHAMED HAMEED, Vice-President

STATE OF Texas
COUNTY OF Dallas

On April 16th, 2019, before me, DANIELA HORVATH, a Notary Public in and for Dallas in the State of Texas, personally appeared MOHAMED HAMEED, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
DANIELA HORVATH
Notary Expires 01/27/2020 #128862890

DANIELA HORVATH
Notary Public, State of Texas
Comm. Expires 01-27-2020
Notary ID 128862890

(This area for notarial seal)

Prepared By: Bernardo Hernandez, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019 1-888-480-2432